# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JAMES D. JONES** | § | |
| **#02440179,** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **NO. A-22-CV-1303-RP** |
| | § | |
| **OFFICER DARREN WRIGHT, et al.,** | § | |
| **DEFENDANTS.** | § | |

## ORDER

Before the Court are Plaintiff's Amended Complaint (ECF No. 10), Plaintiff's more definite statement (ECF No. 14), and Defendant Wright's Motion for Summary Judgment (ECF No. 27). Plaintiff did not file a response thereto. For the following reasons, the Motion for Summary Judgment is granted, and Plaintiff's remaining claims are dismissed.

## BACKGROUND

At the time Plaintiff filed his civil rights complaint, Plaintiff was incarcerated in the Hays County Jail. He was subsequently convicted and transferred to the Holliday Unit of the Texas Department of Criminal Justice – Correctional Institutions Division. Plaintiff's suit relates to his incarceration in the Hays County Jail.

After consideration of Plaintiff's complaint, the Court ordered Plaintiff to file an amended complaint on the form to file a civil-rights complaint. The Court received Plaintiff's amended complaint on January 9, 2023. Plaintiff alleges Officer D. Wright, later identified as Darren Wright, punched Plaintiff in the face, rendering him unconscious on July 26, 2022. Plaintiff believes he suffered a concussion. According to Plaintiff, Officer Wright confiscated a pair of underwear from him during a walk-through of Plaintiff's dorm. Plaintiff states he was

1

uncomfortable, felt unsafe, and asked to be placed in solitary confinement.  Plaintiff alleges the corporal told him they would put his boxers in his property to "stop acting like a bitch about it." Plaintiff claims, after arguing, Officer Wright put his hand on his taser.  Plaintiff allegedly said, "So you're going to tase me for that."  He claims he put his hands up to prevent being tased in the face and Officer Wright stated, "Oh, so you want to box."  Officer Wright punched Plaintiff in the mouth.  Plaintiff asserts he fell unconscious to the floor.  Plaintiff contends the next thing he remembered is waking up in a room with guards standing over him.  He claims he was unaware of where he was.  He alleges he was escorted back to his dorm and was not given any medical attention or taken to the hospital.  Plaintiff alleges he was "refused any knowledge of what medical staff cleared [him] to go back to [his] dorm and refused medical treatment for three to four days." Plaintiff signed his complaint under penalty of perjury and declared all facts presented in his complaint were true and correct.

After consideration of Plaintiff's complaint, the Court ordered Plaintiff to file a more definite statement.  Because Plaintiff named the Hays County Medical Staff as a defendant, the Court ordered Plaintiff to identify the person or persons in the Hays County Medical Staff he contended violated his constitutional rights.  The Court further ordered Plaintiff to specify what each of the defendants either did or failed to do while acting under color of state law that he believed violated his constitutional rights.

In his more definite statement Plaintiff complains he was not taken to the hospital to receive an MRI or CT scan.  Plaintiff states he saw a neurologist three or four days after the incident. According to Plaintiff, the neurologist informed him he needed an MRI.  Plaintiff was unable to identify who denied him medical treatment.  Plaintiff asserts he used forms to request medical appointments and was told "it takes time."  According to Plaintiff, he was given table salt and a

bottle of water for the wounds in his mouth.  He states he has scars in his mouth and a permanent pink mark on his face.  He admits x-rays were taken of his back, but he asserts he was never told the results. Plaintiff believes he should have been given an MRI because he could have had a brain bleed, a serious head trauma, or reinjured his jaw.

The Court ordered service on Officer Wright and ordered Plaintiff to supply the Court with the names and correct addresses of the unidentified medical defendants in order that service could be made on them.  The Court warned Plaintiff that his failure to comply with the order could result in the dismissal of the claims against the unidentified defendants for failure to prosecute. Despite the Court's warning, Plaintiff never provided the Court with information to serve the unidentified defendants.

Officer Wright answered and moved for summary judgment.  He asserts he is protected by qualified immunity.  He contends he did not violate Plaintiff's constitutional rights.  He also contends Plaintiff cannot establish that such rights were clearly established.  Officer Wright also argues Plaintiff cannot establish an injury because Plaintiff failed to produce any evidence supporting his allegation that he was diagnosed with a concussion as a direct result of Officer Wright's alleged use of excessive force.

The incident with Plaintiff was captured on video and substantially contradicts Plaintiff's version of events.  The video shows that Officer Wright and other corrections officers, including a female corporal, were conducting a walk-through of the B-2 Dorm where Plaintiff was housed with more than a dozen fellow pretrial detainees.  The corrections officers noticed that Plaintiff had a pair of non-issued underwear in his possession and confiscated them to be secured in his stored property.  Plaintiff became irate that his underwear was being confiscated and engaged in a verbal altercation with Officer Wright and other officers.  The corporal told Plaintiff that he had

3

county issued "drawers" and to quit crying about it.  Plaintiff yelled "I can take my motherfucking ass to seg, that's what I can do" and slapped his bare chest.  Plaintiff stepped aggressively towards Officer Wright and stated, "I can show you some motherfucking crying." As Plaintiff stepped closer, Officer Wright placed his hand on the taser on his hip.  Plaintiff shouted, "I don't give a fuck about a bitch-ass taser."  Plaintiff assumed a bladed position and raised his hands to a boxing position directly in front of Officer Wright.  Plaintiff shouted, "What's up? I promise you ain't tough."  While continuing to assume a bladed position, Plaintiff bounced on the balls of his feet with his hands raised to a boxing position.  Officer Wright delivered a single personal strike to the left side of Plaintiff's face, causing Plaintiff to fall to the floor.  Officer Wright and several other corrections officers secured Plaintiff's hands behind his back and placed him in handcuffs.  Plaintiff was then removed from B-2 Dorm where he was immediately evaluated by medical staff.

## APPLICABLE LAW

### 1.  Summary Judgment

A party is entitled to summary judgment if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  A summary judgment movant must establish every essential element of their claim or affirmative defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  A dispute as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party opposing summary judgment cannot rest on the mere allegations of their pleadings, but instead must identify specific evidence in the record and articulate how that evidence supports their claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) ("This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.") (internal quotations omitted).   When deciding whether to grant summary judgment, the court should view the evidence in the light most favorable to the party opposing the motion and indulge all reasonable inferences in favor of that party. *Rankin v. Klevenhagen*, 5 F.3d 103, 105 (5th Cir. 1993).   However, summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

### 2. 42 U.S.C. § 1983

Section 1983 provides a cause of action against state actors who violate federal rights while acting under the color of law. *Filarsky v. Delia*, 566 U.S. 377, 380 (2012); *See* 42 U.S.C. § 1983 ("Every person who, under color of any [state law] subjects, or causes to be subjected, [a person] to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured.").   To state a claim under section 1983, a plaintiff must allege "that some person has deprived him of a federal right" and "that the person who has deprived him of that right acted under color of state or territorial law."   *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

## DISCUSSION

### 1. Excessive Force

Plaintiff fails to overcome the defense of qualified immunity. "Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right. The second question is whether the 'right at issue was "clearly established" at the time of the alleged misconduct.'" *Id.* (alteration adopted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The two questions may be answered in any order. *See Pearson*, 555 U.S. at 236.

As to the second prong of qualified immunity, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Id.* (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).

At summary judgment, a defendant's good-faith invocation of qualified immunity shifts the burden to the plaintiff to "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (citation omitted). Courts still construe all facts and draw all reasonable inferences in the light most favorable to the nonmovant. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). But where, as here, there is video and audio recording of the facts at issue, the court is not

6

required to accept factual allegations "blatantly contradicted by the record" but may instead "view [ ] the facts [as] depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Pretrial detainees have a constitutional right under the Fourteenth Amendment's Due Process Clause to be free from the use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). The use of force on a pretrial detainee violates the Fourteenth Amendment if it is unreasonable. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). The Supreme Court has held the inquiry into whether force was reasonable is "solely" objective. *Kingsley*, 576 U.S. at 396-97. A plaintiff can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose. *Id.* The following considerations bear on the reasonableness of the force used by the defendant: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.* at 397 (citing *Graham*, 490 U.S. at 396).

Whether an officer's actions are objectively reasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham*, 490 U.S. at 396). We must assess the reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations. *Fairchild v. Coryell Cnty., Texas*, 40 F.4th 359, 363 (5th Cir. 2022) (citing *Kingsley*, 576 U.S. at 399). "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

The amount of force that is constitutionally permissible must be judged by the context in which that force is deployed. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). In gauging the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for that force. *Id.* The Supreme Court has recognized in the Eighth Amendment context that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Although a plaintiff is not required to show "a significant injury," a pretrial detainee's *de minimis* injuries like bruises, contusions, and abrasions are insufficient to maintain an excessive force claim under Fifth Circuit precedent. *See Westfall v. Luna*, 903 F.3d 534, 547, 549-50 (5th Cir. 2018) (citations omitted); *see also Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011)[1] (holding that a viable Fourteenth Amendment excessive force claim requires that "the plaintiff [must] have suffered at least some form of injury that is more than *de minimis*") (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that "[t]he injury must be more than a *de minimis* injury in the context of a Fourth Amendment excessive-force claim)).

The Court need not determine whether Plaintiff suffered an injury that was more than *de minimis* or the officer's use of force to gain control over an unruly detainee was objectively unreasonable. That is so because Plaintiff points to no authority to demonstrate that the right at issue was clearly established at the time of Officer Wright's alleged misconduct. In *Narro v. Edwards*, 829 F. App'x 7, 13 (5th Cir. 2020), the court determined there was no settled authority

---

[1] The court notes that "unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like)." 5TH CIR. R. 47.5.4.

to put a jailer on notice that a non-deadly punch to gain control of a resisting inmate and prevent the jailer's own assault would violate the inmate's rights.

Accordingly, Plaintiff fails to carry his burden of demonstrating the inapplicability of the qualified-immunity defense by pointing to then-existing precedent would have made it clear to a reasonable officer that Officer Wright's conduct was unlawful under the Fourteenth Amendment in the situation he confronted. For these reasons, Officer Wright is entitled to qualified immunity.

### 2. Medical Care[2]

Plaintiff failed to provide the Court with the names and addresses of the defendants he claimed failed to provide him with medical care.  Accordingly, Plaintiff's claims against the Hays County Medical Staff are dismissed without prejudice.

## CONCLUSION

Defendant Wright is entitled to summary judgment.  Plaintiff's claims regarding medical care are dismissed for want of prosecution.

It is therefore **ORDERED** that the Motion for Summary Judgment (ECF No. 27), filed by Defendant Darren Wright is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against the Hays County Medical Staff are **DISMISSED WITHOUT PREJUDICE** for want of prosecution.

**SIGNED** this 2nd day of August 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[2] Defendant Wright advises that medical care at the Hays County Jail is provided by a third-party contractor called Wellpath and is not provided by staff of the Hays County Sheriff's Office.